IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH W. JONES-BEY, | No. CIV S-08-0289-FCD-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| JAMES TILTON, et al., | |
| Defendants. | |
| _____/ | |

      Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's first amended complaint (Doc. 11).

      The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne,

1

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on the first amended complaint filed on March 17, 2008 (Doc. 11).  Plaintiff names the following as defendants:  James Tilton and J. Gaskin.  Plaintiff alleges:

> Due to C.D.C.R. refusing to follow there own procedure of the Law of Rule's they cause the plaintiff to be stabb and C.D.C.R. knew the same enemy stabb plaintiff month's before.  Plaintiffs C-file will show this mistake with my life, and it was refuse proper medical care & C.D.C.R. refuse to take response ability for this mistake due to evidence of the fact's.
>
> * * *
>
> Director of C.D.C.R. [defendant Tilton] refuse to order his staff to follow C.D.C.R. own law of procedure to rule's on heroic act's due to notice sent to him showing that his staff refuse to addressed appeal LAC-D-98-1547 and mod order #99-50 LAC-D-00-1373, and R.J.D. #06-1463.
>
> * * *
>
> Director of C.D.C.R. refuse to enforce appeals, and mod order's.
>
> * * *
>
> H.D.S.P. reason was very race acted action's.  [¶] Upon coming to SAC CCI Gaskin refuse to correct these action due to he would make him look bad to go against H.D.S.P. staff.  He did not have to act on my case load if he was not going to follow the law.

///

Documents attached to the complaint, and to which plaintiff refers, reveal additional facts.  Specifically, one document reveals that, while housed at Lancaster State Prison, plaintiff was being considered for a "meritorious sentence reduction" because he "came to the aid of a staff member who had taken ill by summoning assistance and remaining on hand until staff arrived."  This document references a "Mod. Order, log #99-50."  If approved, plaintiff would have been awarded a 30-day sentence credit.  A second level appeal response dated March 26, 2007, indicates that plaintiff requested "a sentence reduction under heroic acts."  Plaintiff's grievance apparently was that a Director's Review Board (DRB) to address the request had not been established.  The decision states:

> . . . The Unit Classification Committee at Lancaster State Prison. . . referred the request to the Institutional Classification Committee . . . .  The inmate was informed that this request would have to be revisited at his receiving main line institution as the inmate was currently in the Reception Center Process.
>
> At the Second Formal Level of Review, the inmate was not satisfied and requests that his request be processed while he is [in the Reception Center]. . . .

The decision concluded that sentence reduction requests could not be processed at the Reception Center and that plaintiff's request would be processed once he was assigned to a "mainline" institution.

Also attached to the complaint is a November 30, 2007, order from the Lassen County Superior Court denying plaintiff's state court petition for writ of habeas corpus regarding the sentence reduction.  The order states:

> The petition herein seeks an order of this court that the authorities at High Desert State Prison complete a General Chrono (CDC 128-B) of unspecified content.  The context of this request appears in a fragment of a Second Level Response letter (page 3) re appeal log HDSP-07-1457 and RJD-4-06-01463 signed by R.K. Wong for Chief Deputy Warden M.D. McDonald, wherein highlighted language refers to such action in the event an inmate *clearly* does not qualify for meritorious credit under Penal Code § 2935 (emphasis added).  The failure to complete such chrono does not appear to the court to be an action adversely affecting the petitioner, and in any event it does not appear that the petitioner has appealed the issue to the Director's Level as indicated at the final paragraph of said exhibit.

The petition for writ of habeas corpus is denied.

## II.  DISCUSSION

While plaintiff's complaint is largely incoherent and incomprehensible, it appears from the attached documents that the gravamen of plaintiff's complaint is a due process claim based on prison officials' failure to process his request for a sentence reduction while he was housed at the reception center awaiting assignment to a "mainline" facility.  The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).

Liberty interests can arise both from the Constitution and from state law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993).  In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose."  Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.  Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the

nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

In this case, even assuming that there is a liberty interest in a sentence reduction based on "heroic acts," the court is not aware of any case in which a liberty interest has been found with respect to where such a sentence reduction request is processed. Certainly the prison rules regarding the location for processing such requests neither restrains plaintiff's freedom nor imposes an atypical and significant hardship. To the extent plaintiff's request for a sentence reduction was denied – and this point is not at all clear from the complaint – plaintiff has not alleged that he was denied any process to which he was entitled with respect to any such denial. And, regarding plaintiff's complaints to prison officials concerning the location of processing the request, it is clear that he was provided an opportunity to be heard, both in the prison through the grievance process, and in state court by way of a habeas corpus case.

### III. CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

1         Based on the foregoing, the undersigned recommends that this action be
2 dismissed.
3         These findings and recommendations are submitted to the United States District
4 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days
5 after being served with these findings and recommendations, any party may file written
6 objections with the court.  The document should be captioned "Objections to Magistrate Judge's
7 Findings and Recommendations."  Failure to file objections within the specified time may waive
8 the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 DATED: November 12, 2008

                                  /s/ Craig M. Kellison
                              **CRAIG M. KELLISON**
                              UNITED STATES MAGISTRATE JUDGE